IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BRYAN GIROUX,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-139-STE |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

**I.    PROCEDURAL BACKGROUND**

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-20). The Appeals Council denied Plaintiff's

request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity (SGA) since May 1, 2013, the alleged disability onset date. (TR. 12). At step two, the ALJ determined that Mr. Giroux had the following severe impairments: borderline intellectual functioning, dysthymic disorder, and cognitive disorder, NOS. (TR. 12). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 14).

The ALJ next assessed Plaintiff's residual functional capacity (RFC) and found he could:

> [P]erform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant can understand, remember, and carry out simple, routine, and repetitive tasks; the claimant can respond appropriately to supervisors, coworkers, and usual work situations, but he can have no contact with the general public.

(TR. 16). Then, "[u]nder the expedited process," the ALJ moved past step four, and at step five, he presented several hypothetical questions to a vocational expert (VE) to determine whether there were jobs in the national economy that Plaintiff could perform. (TR. 18, 52). The VE identified three jobs from the Dictionary of Occupational Titles. (TR.

2

52). The ALJ adopted the VE's testimony and concluded that Mr. Giroux was not disabled based on his ability to perform the identified jobs. (TR. 19).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in: (1) assessing the consultative evaluation opinion from Dr. Julie Wallace; (2) failing to consider whether Plaintiff could perform the relevant work on a consistent basis; (3) improperly relying on Plaintiff's daily activities; and (4) crafting an improper question to the VE.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, it will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ANALYSIS

### A. Dr. Wallace's Opinion

The SSA ordered a consultative examination and Dr. Wallace performed the one-time assessment. (TR. 317-321). Dr. Wallace rated Mr. Giroux's GAF as 31-41 and

3

concluded he suffered, in relevant part, from dysthymia and borderline intellectual functioning. (TR. 319-320). The consultative physician believed that Plaintiff was "likely to be taken advantage of by others" and was unable to manage funds, but did not include any functional limitations in her assessment. (TR. 319-320).

Plaintiff does not dispute that the ALJ considered Dr. Wallace's assessment and detailed all her conclusions. (TR. 12-13, 15). Instead, Plaintiff first claims that the ALJ failed to explain what weight, if any, he gave the examiner's opinion. (ECF No. 14:3-4, 8-11). Then, he takes issue with the ALJ's rejection of the Plaintiff's GAF score. (ECF No. 14:8-10). Finally, Plaintiff alleges that the ALJ failed to include limitations in the RFC that would account for Dr. Wallace's findings that Plaintiff needed instructions repeated and would work at a slower pace. (ECF No. 14:4, 10). The Court rejects these arguments.

### 1. The ALJ's Failure to Assign Weight

According to Plaintiff, the ALJ violated the "treating physician rule" because he "never determined the weight to be granted to the Consultative Examiner (CE) who's [sic] opinion conflicts with the ALJ's finding." (ECF No. 14:8). But Plaintiff's argument suffers from a fatal flaw in that he neglects to identify what *opinion* the ALJ failed to evaluate. Outside of the specific GAF score, which the Court addresses below, Plaintiff only cites to Dr. Wallace's *assessments* regarding Plaintiff's speech, thought processes, and "child-like demeanor." (ECF No. 14:3-4, 10).

Under the treating physician rule, an ALJ must assign weight to a physician's *opinion* regarding a claimant's *limitations*. *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th

Cir. 2016). But an ALJ is not required to assign any specific weight to an assessment which "[does] not assign any functional limitations" to a claimant. *Paulson v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (rejecting plaintiff's claim that the ALJ erred in not assigning the consultative examiner's opinion a specific weight because the physician failed to assign any functional limitations to the plaintiff); *see also Singleton v. Colvin*, No. 15-cv-00886-CBS, 2016 WL 7157487, at *9 (D. Colo. Dec. 6, 2016) (finding "no error in the ALJ's treatment of the opinions" which "did not include functional limitations"). Moreover, while Plaintiff's attorney obviously believes that Mr. Giroux's slow speech and thought processes render him unable to work, the ALJ clearly considered this evidence and concluded otherwise. (TR. 12-13, 15). The Court cannot reweigh the evidence and reach a different conclusion based on counsel's speculation that Plaintiff cannot work. *See Vigil*, 805 F.3d at 1201 (internal quotation marks omitted) (the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.").

Plaintiff has simply failed to show any reversible error in the ALJ's assessment of Dr. Wallace's consultative examination conclusions.

### 2. Plaintiff's GAF Score

"The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012). Dr. Wallace concluded that Plaintiff had a GAF score of 31-41. (TR. 320). A GAF score of 31–40 indicates "[s]ome impairment in reality testing or communication ... OR

5

major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Cainglit v. Barnhart*, 85 F. App'x 71, 75 (10th Cir. 2003). "A GAF score of 41–50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley v. Barnhart*, 373 F.3d 1116, 1122, n.3 (10th Cir. 2004).

Plaintiff does not articulate how, exactly, the ALJ erred in discussing the GAF score but clearly believes the GAF score "reflected an inability to work." (ECF No. 14:8). But as the ALJ noted, Plaintiff's GAF score was only "based on that one interview" with Dr. Wallace. (TR. 17, 320). And, a low GAF score, standing alone, is insufficient to prove disability. "[T]he Social Security Administration does not consider GAF scores to have a direct correlation to the severity requirements in [the] mental disorders listings, and the [ ] *Diagnostic and Statistical Manual of Mental Disorders* has discontinued its use because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Rose v. Colvin*, 634 F. App'x. 632, 636 (10th Cir. 2015) (internal quotation marks and citations omitted); *see also Butler v. Astrue,* 412 F. App'x 144, 147 (10th Cir. 2011) (noting that GAF scores that are not linked to any work-related limitations are not particularly helpful and cannot alone determine disability).

Because the ALJ considered Plaintiff's GAF score and the score itself was not significantly probative, the Court rejects any argument suggesting reversal on the issue.

### 3. Dr. Wallace's Conclusions and the RFC

Dr. Wallace noted that Plaintiff needed directions repeated at least once and was slow in responding. (TR. 319). Plaintiff wonders why the ALJ did not account for these limitations in the RFC, (ECF No. 14:4), but his argument is meritless. First, as discussed above, Dr. Wallace did not articulate any functional limitations but only described Plaintiff's reactions during her one-time assessment. Second, two State agency psychologists reviewed Dr. Wallace's assessment and opined that Plaintiff was not significantly limited in his ability to understand and remember "very short and simple instructions." (TR. 61, 63-64, 73, 87, 89-90, 100, 102-103). The ALJ gave those opinions great weight, (TR. 17), and Plaintiff does not challenge that weight assignment. Incorporating those opinions into Plaintiff's RFC, the ALJ specifically noted Plaintiff could only "understand, remember, and carry out simple, routine, and repetitive tasks." (TR. 16). Plaintiff does not explain how these restrictions fail to account for his slow responses and need for repetitive instructions, even assuming such limitations were warranted. As such, the Court affirms on this issue. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (rejecting plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how these restrictions [in the RFC] fail to account for his [limitations]").[1]

---

[1] Plaintiff also suggests the RFC is "flawed" because "it is too general in nature . . . ." (ECF No. 14:2, 12). Aside from his claim involving the hypothetical question to the VE, discussed below, Plaintiff does not develop any further argument on this issue. The Court will of course not develop it for him. *See Keyes-Zachary*, 695 F.3d at 1161 ("We will consider and discuss only those contentions that have been adequately briefed for review.").

#### 4. Summary

The Court rejects Plaintiff's allegation of error regarding the ALJ's treatment of evidence from Dr. Wallace. The record reflects that the ALJ thoroughly and properly assessed Dr. Wallace's conclusions, including Plaintiff's GAF score, and the Court will not reweigh the evidence. Finally, the Court finds that to the extent it was even necessary, Plaintiff's RFC sufficiently accounts for his slow responses and need for repetitive instructions.

### B. Plaintiff's Ability to Sustain Work

Plaintiff next argues that the ALJ failed to consider whether he would be able to sustain work for eight hours a day, five days a week, or hold a job for a significant time without decompensating. (ECF No. 14:4-6, 8). However, aside from claiming the "earning records reflect Mr. Giroux never approach[ed] SGA levels" (ECF No. 14:4) – a claim absolutely belied by the record for many years[2] – Plaintiff cites no evidence in the record showing he is incapable of working eight-hours a day and maintaining employment. Further, the ALJ's finding that Plaintiff could maintain a work schedule and long-term employment is implicit in the RFC assessment. *See* SSR 96-8p, 1996 WL 374184, at \*1 (noting the RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A

---

[2] The record reflects that Plaintiff engaged in SGA in 1983, 1986, 1987, 1988, 1989, 1990, 1994, 1995, 1996, and 1997. (TR. 230). Visit https://www.ssa.gov/oact/cola/sga.html for monthly SGA amounts for non-blind disabled persons.

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Accordingly, the Court finds no grounds for reversal on this point.

### C. Plaintiff's Daily Activities

Plaintiff also challenges the ALJ's reliance on his daily activities to find him not disabled, claiming "'sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.'" (ECF No. 14:6) (citation omitted). The Court finds no error.

Though "sporadic" household tasks may not constitute substantial evidence that a person can engage in SGA, an ALJ should in fact consider the nature of a claimant's daily activities. *Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993) (citations omitted). Here, the ALJ noted that Plaintiff told the consultative examiners that he utilized public transportation, lived alone, and did his own cooking, cleaning, and shopping. (TR. 15). At the hearing, Plaintiff testified he took "regular classes" in high school, except for math, and could read, write, and make change with no difficulty. (TR. 17, 33-35). Plaintiff also claimed he could drive and had taken the written driver's test. (TR. 17, 35-36). Plaintiff further testified he paid his own bills, and could check his e-mails. (TR. 17, 38). In sum, Plaintiff's own description of his daily activities are not "sporadic" and show him capable of performing simple, routine, and repetitive tasks. As such, Plaintiff has shown no error in the ALJ's consideration of this evidence. *See Newbold v. Colvin*, 718 F.3d 12587, 1267-68 (10th Cir. 2013) (holding the ALJ properly considered the plaintiff's daily activities in the disability analysis).

9

### D. The Hypothetical Question to the VE

In his final argument, Plaintiff alleges that the ALJ's hypothetical question to the VE failed to "relate with specificity" the Plaintiff's "specific impairments" and "failed to utilize *all* of the Plaintiff's impairments." (ECF No. 14:10-11). In particular, Plaintiff complains about the terms "simple" and "routine" in the hypothetical question. (ECF No. 14:11). Again, the Court finds no grounds for reversal.

Plaintiff is correct that before a VE's testimony can constitute substantial evidence, the hypothetical question posed to the expert must precisely relate a claimant's impairments. *See Bainbridge v. Colvin*, 618 F. App'x 384, 391 (10th Cir. 2015). But that question "must contain 'only those impairments borne out by the evidentiary record.'" *Id.* (citation and internal ellipsis omitted)). Here, the ALJ asked the VE whether jobs would be available for a claimant who could "understand, remember, and carry out simple routine, repetitive tasks" and "respond appropriately to supervision, coworkers, [and] usual work situations" but with "no contact with the general public." (TR. 52). The Court has already concluded that the RFC properly accounted for Mr. Giroux's slow responses and need for repetitive directions, and fatally, Plaintiff articulates no other specific limitations which the VE should have included. *See, e.g., McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (holding "the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment]"). Finally, Plaintiff fails to explain why the hypothetical question's reference to simple and routine work did not adequately address his limitations and the Court finds

no error on this point. *See Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016); *see also Rivera v. Colvin*, 629 F. App'x 842, 846 (10th Cir. 2015) ("[The ALJ] found that Rivera could understand, remember, and carry out simple instructions, and that she could occasionally interact with supervisors and coworkers, but should have no contact with the public. The ALJ included all of these limitations in his hypothetical questions to the VE. The VE's answer was therefore sufficient to support the ALJ's disability decision.").

## ORDER

The Court has reviewed the medical evidence, the administrative hearing transcript, the ALJ's decision, and the parties' pleadings and briefs. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on November 14, 2017.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE